HARRY HOWARTH, respondent,

v.

CHARLES G. TEUNON, appellant.

[Decided January 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"In April, 1921, a contract was executed by the trustees of the Sickel estate as vendors and complainant as vendee, for the sale and purchase of the property 125 and 127 Warren street, Trenton, for the price of $20,000, of which $1,000 was paid down, $7,000 was to be paid on June 1st, 1921, on delivery of deed, and $12,000 was to remain on bond and purchase-money mortgage. The contract was never consummated. Of the $1,000 initial payment, half was paid by complainant and half by defendant. Defendant was named in the contract as broker, and was to get $600 commissions from vendor.

"In May, 1922, defendant obtained a contract of sale to himself from the same vendor for $17,000 (less 'commission' of three per cent. to defendant as 'broker'), $500 paid down, $12,000 to remain on mortgage, and balance to be paid in cash on June 1st, 1922, on delivery of deed. This $500 was paid by defendant, the contract was consummated by deed to defendant (who also paid the balance of cash payment). Complainant offered to join and pay half in the completion of this purchase, but defendant refused, offering, however, to turn over the property to complainant for $18,116.04, which complainant refused. Defendant, in August, 1923, sold the property to Edward Reeger for $20,500.

"The foregoing facts are not in dispute.

"Complainant says that the first contract of sale was made pursuant to an oral agreement between himself and defendant, that they two should purchase the property as a joint adventure; that the failure to consummate the contract was due to the fault of defendant, who postponed carrying out the requirements of the contract, urging that they find a purchaser before completing the sale. Defendant denies this; says the $500 he put up was by way of loan to complainant, and that complainant neglected or refused to perform the contract.

"Complainant says that in May, 1922, defendant called him up and said he could buy the property for $17,000, and was going to do it and carry out the original proposition, to which he, complainant, assented. Defendant admits the conversation, but says he intended to buy the property to 'protect' himself and to 'protect' complainant.

"The determination of the issue rests in large part upon the conflicting testimony of the two parties. In the latter part of defendant's cross-examination he seriously impeached his credibility, both by the things he said and his manner in saying them. One thing I may mention in this connection is his deliberate and positive statement that he did not tell complainant, in May, 1922, that he was going to buy the property in complainant's name, and his later statement that he might have told this to complainant. There were other features of his testimony that need not be recited in detail, and there was also some other evidence tending toward corroboration of complainant's testimony.

"The preponderance of the evidence is in favor of complainant, and I find that the property was bought as a joint adventure, imposing on defendant the obligation to account to complainant and pay him one-half the net profit on the resale."

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*Mr. Richard S. Wilson,* for the respondent.

*Mr. Martin P. Devlin,* for the appellant.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PAR-KER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 13.

*For reversal*—None.